Kizer or Keezer, Mr. Kellum? Mr. Kellum. Okay. We'll hear from him. Thank you, Your Honor. May it please the Court, my name is Nate Kellum and I represent Rodney Keister, the appellant in this case, who is seeking relief for restrictions imposed on him, keeping him from engaging in protected religious speech on public sidewalks located next to two city streets, University Boulevard and Hackberry Avenue. Hackberry Lane located in Tuscaloosa, Alabama. Of course, one of the issues is whether they're public sidewalks or university sidewalks. Isn't that true? Whether they are... University sidewalks that the public is permitted to be on, but not to assemble and engage in expressive activities without reasonable restrictions. If you say public sidewalks, public property, you're kind of assuming away the issue, aren't you? Well, I think perhaps that's the way it should be. There's no counter evidence that there's public easements for these sidewalks. And if you have access to the sidewalks, then that would seem to resolve the issue. But aside from that, there's certainly cases that have dealt with sidewalks that are on the perimeter, such as United States v. Grace and others, where it's really delved into the larger question. And that is whether it's public or private, whether it's university-owned, whether it's not. And that is, is it a traditional public forum? And that's where you get into the question really of notice and how does it appear, how does it function? And I think what the record has demonstrated here is that even aside from the easement issue and the fact that it is allowed for public access, is that this is a traditional public forum because it's public sidewalks that function as public thoroughfares. There's no question about that. Also, it is not used for specialized purpose. In other words, it's not used for a purpose for the government as a proprietor, as an inlet sidewalk leading to a university building or leading to a classroom or leading to a stadium. Rather, it leads from Tuscaloosa, one part of Tuscaloosa to another. And also, it's physically indistinguishable from every other sidewalk in the city of Tuscaloosa. It blends in and merges with these other sidewalks. And so really, in all these respects, what the record demonstrates is these sidewalks are traditional public for taking a look at the first part. And that is the public thoroughfare aspect of this. These sidewalks accompany city streets. There's no dispute in the record that Hackberry Lane and University Boulevard are city streets. And so these sidewalks flow with them. They go with them. So that just like with the city streets. Were the sidewalks in Bloedorn public or private? They were, well, they're public in the sense it's owned by a public university. But they were found to be limited public for. We don't know whether those sidewalks were public sidewalks or owned by the university, do we, in Bloedorn? We do, we do. That was the finding of the court that those sidewalks were inside the campus. And so it's hard to imagine how they possibly could not. We don't know who owned them, though, do we? In other words, the city, we don't know who owned those sidewalks. There's nothing in the record that states that. In Bloedorn. In Bloedorn. There's nothing in the record that that was a confined campus. So if this were in the district court, the word was used part of the campus. But if this was, let's not use that word. If this was in the center of the campus, it would. And we were applying Bloedorn. It really wouldn't matter whether the sidewalks were owned by the university or were public sidewalks, would it? I don't think so, Your Honor. I think the court would necessarily have to rule that they're traditional public forum. There's no question about that. These are sidewalks. They didn't in Bloedorn. We said instead physical characteristics of the property alone cannot dictate forum analysis. We look to the traditional uses made of the property, the government's intent and policy concerning the usage  That's exactly right, Your Honor. There's a huge difference between Bloedorn and this course. In Bloedorn, this involves sidewalks that the court recognizes being inside the campus. Okay. So if these sidewalks were inside the campus, by that fact alone, it would be a limited public forum? The fact that they are university-used sidewalks. In fact, what I'm trying to say is that they're inlet sidewalks. These are sidewalks that are being used for university purposes because you can have pathways on university campuses, and certainly they all do. But there's a distinction that's drawn between a sidewalk where you take to lead you to algebra class or you take to go to the football stadium. There's a distinction between those sidewalks and sidewalks that flow along city streets that are not used for university purposes. They are used for traversing across the city. And so that's the difference between Bloedorn and here. In fact, also with Bloedorn, a huge significant difference is that Bloedorn, the court recognized that there was a physical distinction in the sense that you could tell the difference between the university sidewalks and others because there was But we said the physical characteristics of the property alone cannot dictate form analysis. We look to the traditional uses made of the property, the government's intent and policy concerning the usage, and any special characteristics. I think that's true, Your Honor, but that does not mean that physical characteristics are not a factor because unquestionably they are. They can be a factor, but these sidewalks are used heavily, if not primarily, to get from one part of the university to the other. No, they're not. Yes, they are. These sidewalks, they flow with a city street and there are all types of private businesses that go along. I know, but there are all types of university buildings. But you don't use that sidewalk to get to any university building. In fact, that would lead you to no university building at all. But you would use it to go to Russell Hall. No, because you would actually have to, there's another sidewalk that actually is perpendicular that would lead you to Russell Hall. You wouldn't use that sidewalk to go. But use it to get to that sidewalk to get to Russell Hall. That is true. That is true. I mean, and a lot of it depends on where you start from. Parking is not abundant anywhere on Hackberry Lane. It depends on where you begin with and where you're going. Well, that's certainly true. But where, if you're going west on University Avenue and you're going down that sidewalk, you see university buildings because there are certainly plenty of them. But you also see a Newby's, a Newk's rather than an Arby's, and you see all types of things that indicate that you haven't entered into a specific place that is just a campus. What it indicates is it's a... But there's no just the campus requirement for limited public forum. There isn't. I believe there is, Your Honor. So, if there's one McDonald's in the middle of a sprawling university, it's a public forum? No, and this is something that was mentioned in the Bladorn case. Really, the way it has to be done is you focus in on the area itself, the specific area. You can't consider the university as a whole as any particular forum because it can be made up of all different types of forum. That's what this court held in Bladorn. And so, what you necessarily have to look at then is, okay, what about the particular place where the speaker wants to speak? And here is these corner sidewalks located at University Boulevard and Hackberry Lane. And a person has no notice that they have entered into the University of Alabama confined campus. Where do they think they got the term University Boulevard? I'm not sure where they have the term. What do they think Denny Chimes is? What do they think the Quad is? What do they think the President's Mansion is? What do they think the School of Social Work, the old Farrah Hall? That's all the heart of campus. But that's not the sidewalks. And so, you have to look at the sidewalks. The sidewalks run through the heart of campus. They take students from one end to the other and through. And it also takes a person from one end of Tuscaloosa to the other, Your Honor. Via the campus. You have to go through. You have to go through. You go by the campus. I thought you were about to make a concession there. You have to go through the campus. And you do. Well, I wouldn't agree with that, Your Honor. And there's certainly nothing in the record that supports that. What the record shows is that you have sidewalks that follow city streets. And that there are university grounds that are adjacent to these sidewalks. Certainly, several parts along the way. But, counsel, don't you have to look at the government's intent and their policy towards this? And I see in the photographs you've got Russell Hall that is right in front of this area. And I know that one of the people here that day, not the plaintiff specifically, had a bullhorn out there in front and was using that. And I would think that when you look at the case law that deals with the educational purpose and those things, having a policy to allow them to put limitations on someone using a bullhorn right in front of a college building, that would fit squarely into the law that gives them the ability to do this. Because it is right in front of a college building. Well, what the facts show in this case, Your Honor, is that it wasn't a bullhorn that was being used there. There was an amplified speaker that was being used in another area that actually was. Well, let's just say that it was a bullhorn being used right in front of a college building. And we're looking at this government intent piece. Right. This is, well, I think the government intent would be, well, who really has access and control there? Because what happened in the facts was is that when they were told to go to this place and they said, on that corner, you're good, what they're told is you have to look out for noise laws there. So you have to look out for city noise laws. So then that's, yeah, if he violated city noise laws through an amplified speaker or otherwise, certainly they would come into play. But this, just because it borders university property doesn't mean that the university has a right to control the speech there. And I believe that's where it falls. Let's go back to a fact sheet. I'm looking at the red brief, page seven. It states that Mr. Keister held up a banner and handed out literature to students. Meanwhile, his associates stood along the west edge of the sidewalk and addressed the students with a loudspeaker. Do you agree those facts are correct? I think those facts are correct as far as they go. What happens when he first went in there, he was at this place across from the quad and that's where he was and that's when that happened. But then he was told, hey, listen, this is university property. You can't speak here. You go to the intersection of University Boulevard and Hackberry Lane. And that's what this case is about. It says and continued the same conduct. He did not continue. And I think the facts really show that. What he did at the other intersection was he handed out literature and he talked to people. And that's where they said, hey, we're not going to let you do that here because you do not have a permit to do it on this public sidewalk. Did you raise an argument below that if this was a limited public forum, you could still prevail? We did. We did raise an argument and the judge asked us about that during oral argument. And there are certainly some concerns there, particularly when it comes to the 10 day advance notice, 10 day business day advance notice. For someone who's just speaking or handing out literature, that is not it seems to be an unreasonable. And also, as far as the sponsorship itself, it seems to include viewpoint considerations. So those arguments were made. But the primary argument is that this is a traditional public forum. And in those and these type of restrictions cannot stand in traditional public forum. I believe I may be into my rebuttal. So I'll just. We'll give you full rebuttal. But when you get back up, point me out to where in your opening brief you argued that if this was a limited public forum, you won because of the 10 day requirement. Thank you, Your Honor. Mr. Ezell. May it please the Court. District Court correctly denied Mr. Keister's request for the extraordinary remedy of a preliminary injunction against the entire grounds use policy. Because this location is a sidewalk in the heart of campus, surrounded by signs, buildings that all notify you, you're in the heart of campus. And it's thus a limited public forum. And Mr. Keister has effectively conceded that the policy was reasonable and viewpoint neutral. If he hadn't conceded that, let me tell you why, tentatively speaking, I think you'd lose. I don't think there's any support nor any common sense basis for saying that your 10 university working days requirement is reasonable. I mean, 10 working days? Yes, Your Honor. If somebody applied on a Friday, you could require him to apply on Friday for an intended use 13 to 14 days later. That is true, Your Honor. But there is an exception there. If it's an event that does not require multiple campus involvement, then we'll do it in those little three days. Yeah. But suppose it does. Sure. Why does it take 10 university working days? Well, Your Honor, the reason is, and I think what recently happened at the University of Florida is a perfect example of this. Depending on the nature of what's going to happen, there may need to be all sorts of preparations, including police preparations. They declared a state of emergency for a speaker, one single speaker, coming on campus in order to protect the safety of the students. That requires time to be done. And the courts have recognized that universities are not as well suited as municipalities in doing this on a short time frame. They also have limited resources to do it. So I think here, having the 10 days is reasonable if it's required to bring in multiple aspects of campus. But if it's not, then we say we'll do it in three days. Where's the three-day exception in the actual text of the policy? It is, I get the exact quote for you, but what it says, Your Honor, is that if it does not require multiple departments of campus, then we'll do it in as little as three days. I'll get the exact appendix quote for you. I would have thought you would also have said, well, not that it's material, but that 10 university working days prior to intended use just applies where there's amplification equipment? No, Your Honor, that would apply on any sponsored outside speaker. Now, where it does not apply is it wouldn't apply if there was some sort of exception where there's a reason in the news of something that requires something timely. They'll do it in as little as 24 hours. I was reading page 7 of 11. It says applications under sections 1-2, 1-3, or 1-4, 1-2, 2-3, and 4. That's use of application equipment. Yes, Your Honor, if you look at appendix 86. Tell me where on your policy, what page it is. The policy is 4 of 11, number 5. You see what it says? If the event does not involve factors that require multiple university departments, approvals may be given as few as three days.  Yes, Your Honor. That doesn't mean it has to be. And that's the approval, not the submission. Applications under 2, 3, or 4 must be submitted no later than 10 university working days. Failure to make timely submission may result in denial. So the guy has to submit his application as many as 13 or 14 days if he does it on a Friday. I'm sorry, if he wants to do it 10 university working days from a Friday. Judge Carnes, I respectfully disagree. I think if you read the policy, what it's saying is they prefer the 10-day notice. But if these other factors are in place, including not requiring multiple departments, but also for something that happens spontaneously that requires only a 24-hour notice, that they will do it quicker. They will do it quicker. You understand they will do it quicker and how soon you have to submit your application are two different things. Absolutely, Your Honor. Okay, where is the exception to you've got to do it no later than 10 university working days before the intended use? Where is the exception to that? I think in addition to the three days where they say they may do it in three days. No, it doesn't say you may do it in as few as three days. It says they may respond to it. Yes, Your Honor. These are combined. You've got to do it no later than 10 university working days and then they may respond in three days. Your Honor, how I read that is we request you apply 10 days. But if this three-day exception would be applicable, we'll do it in three days. Okay, so in your example, if you apply on a Friday, instead of waiting the two weeks to that Friday, we would do it the following Monday because it's in three days. We're having a communication problem. I apologize, Judge. The way I read the policy, if they apply to do it in seven university working days, you, the university, may say we reject your application because it was not submitted in 10 university working days before the intended use. And if you do that in three days, one day, 30 minutes, or whatever, you're still enforcing the 10 university working days prior application rule. And I'm suggesting to you that's unreasonable. I understand. So I make two points on that. One, I read the policy differently in the sense that we request the 10-day notice, but we then waive that if these other factors apply. Tell me where the waiver of the 10 prior university working days rule is. In Section 5 there where we say we may do it in three. No, that's your response. Why can you not? I thought the English language meant the same to both of us. Sure. Department approvals. Approval may be given in as few as three days. You would agree with me that disapproval may be given as well. Yes, sir. Absolutely. In one stated grounds for denial of the request is it wasn't submitted far enough in advance. It doesn't matter how quickly you get back to them and deny that. If it's unreasonable to require that it be submitted up to 14 calendar days in advance, 13 or 14, then it's unreasonable. Yes, sir. Two points there. I think with that and how I read the policy, though, is there are these exceptions where particularly the 24-hour for something that's timely in the news, that what the policy is saying is we won't make you wait the 10 days for that. We'll do it as quickly as 24 hours. But let me also move to that. Because it's not timely in the news. He just wants to talk about the good news from the Bible. Sure. I guess that is timely. I would agree. But I think you've got problems, counsel. I don't want to take up all your argument time. I'm repeating myself. Sure. Let me talk about the reasonableness of it, though. I do think that is an important issue. And I do think that university campuses are very different in terms of how we are able to respond to potentially dramatic events. And I think the news particularly shows how that time is necessary. If you look at what's happened at the University of Virginia, the University of Florida, at Auburn University, those do require a great deal of time and effort to mobilize police, to mobilize protection, to close buildings, to arrange for detours of traffic. All those things take a large amount of time. Thirteen or fourteen business days. Yes, Your Honor. Calendar days, I'm sorry. Sure. If you're having to declare a state of emergency to protect the safety of the students, I do think you will. Counsel, football games are delayed and transferred for hurricanes in less than ten university working days. Absolutely, Your Honor. But planning for football games typically takes far more than fourteen working days. When you're planning that, you plan for that for a long time. If you move them to another campus because of the threat of a hurricane, which has happened recently, you've got to plan for them at that other campus. Yes, Your Honor. And it is done in fewer than thirteen or fourteen calendar days. But I would say that the test is not whether it's the most reasonable, whether it is reasonable. And I would say given the circumstances. So what may not be reasonable is there not being an exception for the case where it doesn't require this marshalling of resources. I can see that a more reasonable way of tackling that would be if it does require this infrastructure, then it can be delayed for a period of seven days. But if you are someone that just wants to do something simple, then there is some procedure in place to allow that to go forward on a more timely basis. And I can say this, and I know we disagree about the reading of this. But I can say as a matter of practice for the university that how they have implemented Section 5 is that if these other factors are not required, then they do it in three days. That's how it has been implemented in the past. Then they do it. Yes, Your Honor. Do they require the applicant to file it any more than three business days in advance if these complicating factors are not present? No, Your Honor. Okay. Then you need to change your policy and say that. This is a facial attack on the policy as I understand it. I understand that, Your Honor. And I agree it could be written better. But I do think if you read these together, both Section 5 and Section 6, it does indicate that what they are doing there is agreeing to do it. Because in 6, you do it in two calendar days. And it can be done within 24 hours. And I think if you read all those together, it indicates that the university is willing to do it on a shorter time frame than the 10 business days. The other issue I'd like to address is the fact that this has actually been conceded. And you will not find this argument anywhere in the appellant's briefs to this court. And if you read the oral argument before the district court, Mr. Kellum basically said, I don't have much of an argument on this. The only potential thing I could argue would be the 10 days, but that's probably not going to get me there. So I think if you look at what's been done, particularly to this court, there's not a single argument in any of these briefs that this policy was not viewpoint neutral and unreasonable. He has wagered all of his arguments that you would find this particular sidewalk to be a traditional public forum and be then judged under that analysis. He's not made that argument to this court. Now, I have an argument about the first part of the argument, I mean a question. And that is you do concede that there are businesses in this general area. So let's say I think there's an Arby's right there. If someone wanted to protest in front of the Arby's about them selling venison, I guess they're selling now, would the university have some ability to control the protester in front of the Arby's about Arby's just because they were in this area that the university considered the heart of the campus? Would it extend that far? Sure. And to be clear, and the record is hard. That's why it's hard to sort of do this visually. But if you're there, the Arby's is not right in this corner. It's more than a block down the street, but you can see it from there. And the Arby's there, I think the difference there, and the honest answer is, you know, that that is the sort of perimeter of campus. Those are private buildings that run on the south side there and further east from where we're talking about. And if you get to that perimeter, then I do think that's where the University v. Grace type analysis would come into play because those are, as far as I know, those are private businesses on private land with a different sidewalk sort of running in front of them. They do not have all of the same indicia that you have here at this sidewalk in the heart of campus. Well, what if you did have a private business right here in the heart of campus and someone wanted to protest that private business in front of that private business on that sidewalk? Would the University be allowed to limit that as well under the same analysis? Absolutely. And there are. You know, if you go, for instance, into the Ferguson Center where there's a student, there are private businesses that the University brings in to sell food to the students. And in that situation where it's in the heart of campus, absolutely, the University would still control and the University's policies would still regulate those. I think the only time where you would potentially run afoul of that is when you get to the very perimeter of campus and where there's a privately owned business at that point. But if it's a business that the University brings into the heart of campus, then that would be a limited public forum under this courtship. In the businesses, the bank and the Arby's are at least a block away from the block at issue in this case. Is that your position? Yes, they are. And if you look, the four properties around this very corner are three clearly marked University buildings, Russell Hall, Farrah Hall, Galilee Hall. And the fourth one is a park that is then connected to the Episcopal Chapel for the campus. So all four of those buildings at that intersection demonstrate that this is part of campus. Who owns the land under the private businesses? That, Your Honor, is not in the record and it's not real clear exactly who owns the land, for instance, where the Arby's and the Nukes are. Okay. Thank you. Thank you. Mr. Kelton, three minutes. If you would, talk to us about why you haven't waived the reasonableness if it's a limited public forum. Thank you, Your Honor. We challenge the advance notice as well as the permit requirement itself in both the brief-in-chief and the reply brief. In the brief-in-chief, it's in pages 43 through 46. And then in the reply brief, it's pages 13 through 14. What about the quote he attributed to you in the district court? Yeah, that was, I think that could be, I'm not sure that was the complete statement. I think what I said was is that, and as I feel here, I believe our strongest argument is the forum status argument. And that's what I was really urging to the court then and that's what I'm urging to the court now. But I do believe that in any forum, the permit requirement for a 10 business day advance notice is constitutionally problematic. And I think in the reply. Counsel, I'm a little confused. Certainly. Just help me with this. I'm looking at the statement of issues. The second issue says may, the way I read, assuming it is a traditional public forum, may the 10 day business advance notice be required. That's the way I read the second issue. Now, it's hard to quickly read page 43, but I assume that this applies to assuming a traditional public. It's a public forum. Does the 10 day advance notice, is that required? Is that the way you read it? Yeah, I think the way it's presented is that it does not survive traditional public forum, which was the first argument. But then also that it wouldn't survive in any forum. You're making an argument that it does not survive scrutiny, assuming it's a traditional public forum. Or any forum for that matter. That's not what you say. You say traditional public forum. Where do you say you are making a facial challenge? Well, the facial challenge is contained in the complaint itself. I mean, that's as far as the challenge. In the brief. Oh, in the brief. I believe that's probably set out in the statement of presentation of case as to what we're challenging. If I can make a very quick comment about perimeter before my time's up. And I appreciate the court's patience with me on this. But I do think it's a very, very important point. If you take a look at the cases of McGlone v. Bell, which is Sixth Circuit 2012 decision. And also Bristow v. Faulkner, Fifth Circuit decision 2000. Involve the same type of situation with the streets doing the same thing. Basically, what they're doing is they're going through and buy university property. And what those two appellate courts found in that situation is that that's traditional public forum. Because they follow through with these public streets. And so that was the holding in McGlone. That was the holding in Bristow. And I do not believe Bladewarne really touched it because the record was such where it really didn't make that distinction. Counsel, you cover that in your brief. We'll take that case under submission. Next one is Manatlee v. Horne.